John E. BENNETT, John R. Richbourg, Bob Haymond, James G. Rodger, Charles F. Tisdale, William H. Wiley, Anne E. Wiley, Claudette H. Bennett, Jacqueline L. Hammond, James R. Woodruff, Elizabeth Woodruff, Sybil Hughey, Michael Hughey, Betty L. Thomas, Lawrence W. Grimes, Karlos W. Kithil, Thelma F. Kithil, Elva Hoover, Anna R. Brown and Ann R. Mitchell, Appellants v. CITY OF CLEMSON, Respondent.

(358 S. E. (2d) 707)

Supreme Court

*Larry C. Brandt*, of *Larry C. Brandt, P.A.*, Walhalla, *for appellants.*

*Henry L. Floyd*, Pickens, *for respondent.*

*Christopher G. Olson*, of *Olson and Lindsay*, Clemson, *amicus curiae for Frederick L. Russell, trustee.*

Heard May 19, 1987.

Decided July 20, 1987.

FINNEY, Justice:

This is an appeal from a zoning decision of the Board of Adjustment of the City of Clemson granting Wyant Associates' (Wyant) request for a variance to construct a multi-family development in Clemson. This request for variance was initially denied by the Board of Adjustment (Board) but upon reconsideration, it was approved. The Board of Adjustment's decision was affirmed by the circuit court. We reverse.

Appellants are landowners residing in single-family units in the neighborhood where Wyant proposes to build a multi-family housing development. In October, 1984, Wyant Associates, the developer of the housing project, submitted a proposal to the Clemson Planning Commission to construct a 324 unit group housing development. The Planning Commission denied Wyant's request because the zone, when combining the proposed development with existing housing, exceeded the 500 unit maximum housing density permitted by Clemson's 1971 Zoning Ordinance.

On November 5, 1984, Clemson's City Council passed a revised zoning ordinance lowering the density requirements. On November 12, 1984, Wyant resubmitted a revised plan for the construction of 294 multifamily units and 10 single-family units. The Planning Commission, in considering Wyant's revised request, chose to treat it under the 1971 Ordinance rather than the 1984 Ordinance. As a result, the Planning Commission approved Wyant's revised plan and recommended it to the Board of Adjustment. On June 13, 1985, the Board denied Wyant's request for zoning approval of the development. The next day, Wyant's attorney requested the Board to reconsider its decision. On July 1, 1985,

the Board was reconsitututed adding two members. On July 11, 1985, the reconstituted Board heard and approved Wyant's request by a vote of four to two.

I. Appellants contend that the Board of Adjustment acted illegally and/or in excess of its lawfully delegated authority in reconsidering its June 13, 1985, decision.

Whether a zoning board has the power or authority to reconsider and reverse a matter it has previously decided is a novel issue for this Court. The enabling statutes do not expressly prohibit or permit the Board of Adjustment to rehear a matter upon which it has rendered a decision. *See,* S. C. Code Ann. §§ 6-7-710 to 830 (Law. Co-Op 1977 & Supp. 1986). Likewise, the City of Clemson's zoning ordinances do not contain any provision for the Board to reconsider a matter once it has rendered a decision in a case. *See,* City of Clemson Zoning Ordinances, Article XVI, §§ 1603-5 (1971); Article IX, § 914 (1984). In the absence of a legislative pronouncement prohibiting the Board from reconsidering a matter, we find no illegality or acts in excess of lawfully delegated authority under the facts of this case.

An administrative agency's power to reconsider or rehear its previous ruling is curtailed significantly in most instances by enabling legislation. The reasoning advanced in support of a restriction on an agency's authority to reconsider a case is predicated upon the desirability, practicality and need for finality in the administrative decision-making process. *See, Miles v. McKinney,* 174 Md. 551, 199 A. 540 (1938). Without finality in the decision-making process, all determinations and decisions would be subject to change at the caprice of a governing body's members, which would inevitably lead to uncertainty and instability in the decision-making process. *See. e.g., Crawford v. Town of Winnsboro,* 205 S. C. 72, 30 S. E. (2d) 841 (1944). In some jurisdictions, however, Courts have acknowledged that Boards have the power to rehear or reconsider its decisions in the absence of a specific grant of legislative authority. *See generally,* 2 Am. Jur. (2d), *Administrative Law,* § 522 et seq. (1962 & Supp. 1986). In cases permitting an agency to reconsider its decision, courts have emphasized that an agency's power to reconsider or rehear a case is not an arbitrary one, and such power should be exercised only when there is justifica-

tion and good cause; i.e., newly discovered evidence, fraud, surprise, mistake, inadvertence or change in conditions. *Id.,* at § § 523, 524. *See also, Stanley v. Brown,* 261 N. C. 243, 134 S. E. (2d) 321 (1964), and *Crawford v. Town of Winnsboro, supra,* 30 S. E. (2d) at 844.

In the instant case, Wyant requested the Board to reconsider its decision, asserting (1) the absence of the attorney who was most familiar with the project from the hearing; (2) the fact that Wyant or the architect did not appear before the Board; and (3) the need to submit additional facts and data. Wyant contended such a reconsideration might possibly avoid subsequent litigation. We are of the opinion that enormous hardship could be the consequence of adopting a bright line rule of law which denies Boards the power to correct matters that were originally neglected, but are capable of speedy and practical resolution. *People ex rel. Brennan v. Walsh,* 195 N.Y.S. 264 (1922). This Court holds that under the circumstances, the Board did not abuse its discretion nor act arbitrarily in reconsidering its earlier decision.

II. Appellant further contends that the Board did not validly approve the variance by the requisite number of votes at the July 11, 1985, rehearing.

In order to properly address this question, this Court must first determine whether the 1971 or 1984 zoning ordinance of the City of Clemson was applicable in the Board's reconsideration of Wyant's request to effect a variance in the ordinance. It is well established law in South Carolina that there is a presumption that statutory enactments are prospective rather than retroactive in their operation unless they are remedial or procedural in nature. *Oehler v. Clinton,* 282 S. C. 25, 317 S. E. (2d) 445 (1984). Furthermore, in instances where old laws are amended, modified or repealed by new ones, the new law becomes immediately effective. *McGlohon v. Harlan,* 254 S. C. 207, 174 S. E. (2d) 753 (1970). Thus, this Court concludes that the 1984 Ordinance was applicable and its voting procedures were controlling.

The November 5, 1984, ordinance required the concurring vote of four members "to decide in favor of the applicant on any matter upon which it was required to pass." Therefore,

four concurring votes were needed to approve the application at the reconsideration hearing on July 11, 1985. The application was approved by a four to two vote of the Board. One of the four concurring votes included an absentee vote. Appellants submit that in the absence of an express legislative provision or established procedural policy, there is no authority allowing the counting of absentee ballots. No provision in the zoning ordinance nor the state enabling statutes permits a member of the Board of Adjustment to vote in absentia. Article IX, Section 911, of the 1984 Ordinance states:

> The Board shall keep minutes of its proceedings, showing the vote of each member upon each question, *or if absent* (emphasis supplied) or failing to vote, indicating such fact.

The Supreme Court of Alabama, in construing a similar provision of an Alabama statute, held that the statute requiring the vote of four concurring members of a board to effect a variation in a zoning ordinance meant that the "four concurring members [votes] must be recorded on the minutes of a meeting at which those members were present." *Moore v. Pettus*, 260 Ala. 616, 71 So. (2d) 814, 820 (1954). This Court finds such a conclusion persuasive. Section 911 states that the Board shall keep the minutes of its proceedings showing the vote of each member unless absent. The non-precatory language in the ordinance certainly suggests, if not mandates, that absent members cannot vote. As a result, this Court concludes that the Board exceeded its authority in counting the absentee ballot which provided the requisite fourth vote to approve the variance. Because the variance was not approved by the necessary four concurring votes, we reverse the trial court's decision affirming the Board of Adjustment's decision.

Reversed.

NESS, C. J., GREGORY, HARWELL, JJ., and Acting Associate Justice BRUCE LITTLEJOHN, concur.